FILED
2014 Sep-29  PM 01:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN  DIVISION

| | | |
|---|---|---|
| **JEFFREY GLOVER**, | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | **CV-13-BE-2040-E** |
| **PATRICK R. DONAHOE, et. al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |
| | ] | |
| | ] | |
| | ] | |

## MEMORANDUM OPINION

This matter comes before the court on "Defendants' Motion to Dismiss Plaintiff's First Amended Complaint."  (Doc. 17).  Plaintiff Jeffery Glover brought Title VII claims of employment discrimination, retaliation and hostile work environment arising out of his employment with the United States Postal Service ("USPS").  (Doc. 1)  Glover also brought § 1983 and § 1981 claims based on alleged violations of his Fifth Amendment due process rights arising out of his termination from employment with the USPS.  Finally, Glover brought claims of libel and slander arising out of statements made by the Defendants during the course of their employment with the USPS.  (*Id.*)  Defendants Patrick Donahoe, Darren Buggs, Derrick King, and Stephanie Johnson filed their motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  (Doc. 17).  For the reasons stated in this Memorandum Opinion, the court FINDS the Defendants' motion is due to be GRANTED in its entirety.

## I.  PROCEDURAL BACKGROUND

On November 6, 2013, the Plaintiff, Jeffrey Glover, filed the original Complaint.  The Defendants filed a motion to dismiss (Doc. 11), and after briefing concluded on that motion, Glover filed the current Amended Complaint (Doc. 15).  Prior to discovery, the United States Attorney filed a certification pursuant to 28 U.S.C. § 2679(d)(1) stating that all of the individually-named defendants—Patrick Donahoe, Darren Buggs, Derrick King, and Stephanie Johnson—acted within the scope of their employment with the USPS at the time of the alleged libel and slander.  (Doc. 16).  The certification sought to substitute the United States as a party for the individually-named defendants as to the libel and slander claims only.  (*Id*.).  The court allowed briefing on the certification because of the potentially dispositive effects certification would have on Glover's libel and slander claims.  (*See* Doc. 19).  Glover challenged the certification and requested preliminary discovery and an evidentiary hearing on the issue (Doc. 18) and briefing ensued on Glover's challenge.  (*See* Docs. 18, 20, & 22).  In an Order dated May 13, 2014, the court denied Glover's request for discovery and an evidentiary hearing, and ordered that the United States be substituted as a defendant for the individually-named defendants *only* as to the libel and slander claims.  (Doc. 24).  The individual defendants remain as party defendants for the other claims asserted.

After ruling on the certification issue, the court entered a briefing schedule to proceed with the motion to dismiss, and that motion came under submission as of June 16, 2014.

## III.  FACTS

Glover is a 54-year-old white male, who has been an employee of the USPS for more than 25 years, and remains an employee.  (Doc. 15, ¶ 6).  On March 4, 2010, Glover was

delivering mail in a mail vehicle on Cobb Avenue in Anniston, Alabama when he encountered a van blocking the narrow street.  (*Id.* ¶ 8).  Carolyn Chandler, the driver of the van and an African-American, later complained about Glover to Anniston's USPS facility, claiming that Glover had used the following inappropriate language during the encounter: "Get out of the fucking way" and "Get out of the way black nigger."  (*Id.* ¶ 9).

In contrast to Chandler's version of the incident, Glover contends that Chandler was the only one yelling that day, and claims that he did not hear what she was saying because the van's windows were up, and the weather was blustery.  (*Id.* ¶ 8).  Glover characterizes his own communications with the van driver as polite: raising his hands in a "what's going on" gesture, holding up mail, motioning that he needed to pass, and eventually leaning out of his vehicle and asking the van driver to stop blocking his way or he would have to call the Anniston Police Department.  (*Id.*).  After the reference to the police department, the van driver backed up and allowed Glover to pass.  (*Id.*).  Glover states that at the time of these communications, he remained about twenty-five feet away from the van and both drivers remained in their vehicles. (*Id.*).

On March 8, 2010, Sonya Cobb, the Customer Service Supervisor for the USPS Anniston facility, who is white, conducted an investigative interview of Glover, asking him to give details about the March 4 incident.  (*Id.* ¶ 11(a)).  Cobb did not inform Glover of the allegations against him or the existence of any witness statement.  (*Id.*).  In the days following the interview, other postal workers began asking Glover about the March 4 incident, indicating that they had heard he had "blessed out" or "cussed out" a customer.  (*Id.* ¶ 11(b)-(e)).  Some co-workers referenced rumors that Glover had used a racial epithet and/or profanity with a customer along his route.

3

(*Id.* ¶ 11(b)-(e)).

On March 11, 2010, a week after the incident with Chandler, Cobb filed an

Administrative Action Request, relaying Chandler's complaint and charging Glover with

inappropriate conduct.  (*Id.* ¶ 9).

Glover later called the EEOC to complain about the rumors, and the EEOC instructed

him to request a meeting with the postmaster and a National Association of Letter Carriers

("NALC") union representative.  (*Id.* ¶ 11(f)).  On March 19, 2010, Glover provided a written

request to Cobb asking to speak to Defendant Darren Buggs, the acting Postmaster at the time

and a black male.  (*Id.* ¶ 11(g)).  Cobb gave a copy of the request to NALC Branch 448 President,

Nat Davis, but took no additional action.  (*Id.*).  On March 22, 2010, Glover again requested to

speak with Buggs, but received no response.  (*Id.* ¶ 11(h)).

On March 24, 2010, USPS Supervisor Rodney Sturkie took Glover to the postmaster's

office where he met with Cobb, Davis and Defendant Derrick King, a black male.  (*Id.* ¶ 11(i)).

They gave Glover a "Notice of Removal" from USPS terminating his employment, effective

April 23, 2010.[1]  (*Id.*).  King then escorted Glover out of the USPS building after taking his

badge and allowing him to pick up his personal belongings, which had been gathered and placed

at the supervisor's desk.  (*Id.*).  Glover characterizes this procedure as humiliating.  (*Id.*).

On April 9, 2010, NALC Representative Steve Ockay and Cobb met with Glover to

commence the grievance process appealing his termination.  (*Id.* ¶ 11(l)).  At the meeting, Glover

viewed the evidence against him, but the parties were unable to resolve the dispute.  (*Id.*).

---

[1] The court notes that Plaintiff incorrectly states in his Amended Complaint that the
effective date of his termination was July 23, 2010.  This termination actually became effective
30 days after the Plaintiff received the Notice of Removal–April 23, 2010.

On April 28, 2010, five days after the termination effective date, a dispute resolution team overturned Glover's termination, and instructed Glover to report to work on April 29, 2010.  (*Id*. ¶ 11(o)).

After his reinstatement, Glover points to several incidents that he characterizes as retaliation.  Two incidents center around USPS's failure to install Glover's entrance codes to the USPS's back door lock.  On May 13, 2010, Glover provided a written request to USPS to install the code to allow him to enter the building without being let in by a co-worker.  (*Id*. ¶ 11(r)).  On May 14, 2010, Glover attempted to access the back door but found that his entrance code was ineffective.  (*Id*.).  Glover attempted again to access the back door two weeks later and found that his entrance code still had not been installed.  (*Id*.).  Glover states that as a result, he needed co-worker help to enter the building, and alleges that his co-workers joked and laughed at him, causing him to feel disrespected and embarrassed.  (*Id*.).  The facts do not reflect any further problems with the back door locks after the two-week period.

Another incident of alleged retaliation relates to the payment of backpay associated with a dispute resolution settlement entered into by Glover and the USPS.  The dispute resolution settlement required the USPS to pay Glover $600.00 of backpay within 10 days of the April 28 settlement.  (*Id*. ¶ 11(p)).  On May 14, 2010, Glover's check stub revealed a payment of $10.00 for overtime back pay, instead of the $600.00 due.  (*Id*. ¶ 11(s)).  On May 18, 2010, NALC representative Ockay, requested the Defendants explain their failure to include the correct settlement amount in Glover's check.  (*Id*. ¶ 11(t)).  The Defendants assured Glover that the mistake would be corrected on the next pay period, and on May 27, 2010, Glover received the proper amount of backpay.  (*Id*.).

On August 21, 2010, Glover filed his original EEOC Complaint, which the EEOC denied on October 15, 2010.  (*Id*. ¶ 11(z)).  On May 21, 2012, Glover filed an appeal, and on August 9, 2013, the EEOC issued a final denial of the appeal and a right to sue letter.  (*Id*. ¶ 11(dd)).

### III.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).  It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the

complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has identified "two working principles" for the district court to use in applying the facial plausibility standard.  The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of well-pled factual allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.  Thus, under prong one, the court determines the factual allegations that are well-pled and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pled facts.  That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.*  If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

## IV.  DISCUSSION

Glover's Amended Complaint contains eight counts: Count One - Race Discrimination by USPS; Count Two - §1983 and § 1981 Claims For Violation of Glover's Due Process Rights; Count Three - Retaliation; Count Four - Relief from the EEOC; Count Five - An Action Under *Bivens v. Six Unknown Fed. Narcotics Agents*; Count Six - Libel; Count Seven - Slander; and

Count Eight - Reasserts Claims of Race Discrimination.

For the reasons stated below, this court will GRANT the Defendants' Motion to Dismiss as to all eight counts.

### A.  Count One - Race Discrimination by USPS

In Count One of his Amended Complaint, Glover alleges that Donahoe, Buggs, King, and Johnson removed him from his position at USPS purely because of his race and gender.  (Doc. 15, ¶ 14).  Glover does not state the statute under which he is asserting this claim.  Nevertheless, 42 U.S.C. § 2000e-16, Title VII, provides the exclusive remedy for federal employees alleging employment discrimination.  *See*, *e.g.*, *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 829 (1976); *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 45 (11th Cir. 1997).  Therefore, the action must be analyzed as a Title VII claim for discrimination.

Individual capacity suits against supervisors or co-employees, however, are inappropriate under Title VII. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991); *Garcia-Cabrera v. Cohen*, 81 F. Supp. 2d 1272, 1278 (M.D. Ala. 2000) ("Title VII provides aggrieved federal employees no cause of action whatsoever against co-workers or supervisors for alleged employment discrimination.").  The only appropriate defendant in a Title VII action against the federal government is the agency head in his official capacity.  *Canino v. United States E.E.O.C.,* 707 F.2d 468, 472 (11th Cir. 1983).  Therefore, the only properly named defendant in the Title VII claim before the court is the Postmaster General of the United States, Patrick Donahoe, in his official capacity.

Therefore, the court will GRANT the Motion to Dismiss Count One as to Darren Buggs, Derrick King, and Stephanie Johnson in total, and against Patrick Donahoe in his individual

capacity.  Donahoe remains in his official capacity at this time.

To state a plausible claim for racial discrimination against Donahoe in his official

capacity, Glover must allege facts showing that "(1) he is a member of a protected class; (2) he

was qualified for the position; (3) he suffered from an adverse employment action; and (4) he

was replaced by a person outside his protected class or was treated less favorably than a

similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents of Div. of

Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

### i.      *Element One: Member of a Protected Class*

Although Glover, as a white male, is not a member of a traditionally protected class, the

protections of Title VII are not limited to members of minority groups.  *See McDonald v. Santa

Fe Trail Transp. Co.*, 427 U.S. 273, 278–79 (1976) ("Title VII of the Civil Rights Act of 1964

prohibits the discharge of 'any individual' because of 'such individual's race' . . . . Its terms are

not limited to discrimination against members of any particular race."); *Schoenfeld v. Babbit*, 168

F.3d 1257, 1268 (11th Cir. 1999) (recognizing that a white male was a member of a protected

class); *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1082 (11th Cir. 2005).  Therefore, as a white

male, Glover is a member of a protected class.

### ii.      *Element Two: Qualified for his Position*

The only allegation in Glover's complaint relating to his qualification for his position is

that he had been working at the Post Office for over twenty-five years.  (Doc. 15, ¶ 6).

Defendants do not contest that Glover is qualified.  Viewing the facts set forth in the First

Amended Complaint in the light most favorable to Glover, he has pled sufficient facts to meet

element two.

9

### iii.   Element Three: Adverse Employment Action

To establish an adverse employment action under Title VII's anti-discrimination clause, an employee must show "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in originial).  Whether a change is adverse is an objective inquiry, asking whether "a reasonable person in the circumstances" would find the claim to be "materially adverse." *Id.* The Eleventh Circuit has stated that  "[a]n adverse employment action is an ultimate employment decision, such as discharge or failure to hire, *or other conduct* that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Van Voorhis v. Hillsborough Cnty. Bd. Of Cty. Com'rs,* 512 F.3d 1296, 1300 (11th Cir. 2008) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 578 (11th Cir. 2000) (emphasis added); *see Jackson v. City of Centreville*, No. 09-02115, 2012 WL 4482393 (N.D. Ala. Aug. 16, 2012) (finding an adverse employment action even though plaintiffs were reinstated two weeks after termination with backpay).

Glover has sufficiently alleged an adverse employment action.  On March 24, 2010, Glover received a Notice of Removal from his employer effective April 23, 2010.  (Doc. 15, ¶11(i)).  On April 28, 2010, the USPS overturned Glover's removal, and he was reinstated to his original position.  (Doc. 15, ¶ 11(o)).  Glover was awarded an overtime back pay adjustment in the amount of $600, which was not paid in full until May 18, 2010.  (Doc. 15, ¶ 11(t)).  Although Glover was only terminated from employment for five days and was eventually compensated for his lost wages, these alleged injuries are nevertheless sufficient to constitute an adverse

employment action.  *See Crawford v. Carroll* 529 F.3d 961, 972 (11th Cir. 2008) ("[A]n

employer cannot undo the harm that its actions have caused, and thereby avoid liability, simply

by attempting to make the employee whole retroactively."); *Brackin v. Int'l Paper*, No. 10-

03444, 2012 WL 4482393 (N.D. Ala. Oct. 10, 2012) (finding that the loss of use of income and

benefits during the time between termination and reinstatement constituted an adverse

employment action).

Accordingly, Glover has sufficiently alleged facts to meet element three of his *prima

facie* case.

### iv.    Element Four: Similarly Situated Employees Treated Differently

To establish element four, Glover must point to a similarly situated employee outside his

protected class who received more favorable treatment than he received.  *Holifield v. Reno*, 115

F.3d 1555, 1562 (11th Cir. 1997) (citing *Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d

1068, 1073 (11th Cir. 1995)).  To make the comparison, Glover must show "that he and the

employees are similarly situated in all relevant respects."  *Holifield*, 115 F.3d at 1562 (citations

omitted).  This requires that the "quantity and quality of the comparator's misconduct be *nearly

identical* to prevent courts from second-guessing employers' reasonable decisions and confusing

apples with oranges."  *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008) (emphasis

added).

In the present case, Glover points to William Bell, a black man employed by the USPS.

(Doc. 15, ¶ 24).  Glover alleges that Bell "was allowed to retain his employment despite multiple

allegations of dischargeable offences against him from credible employee sources within the

USPS."  (Doc. 15, ¶ 24).  Specifically, Glover alleges that "Bell was consistently accused of

sexually harassing his co-workers." (*Id.* ¶ 25). Although the charges against Bell and Glover both involve allegedly terminable offenses, the conduct is not "nearly identical." Bell's alleged misconduct involves making sexually harassing statements to USPS *employees*. In contrast, Glover was accused of making a racially derogatory comment to a *customer*. Because the offensive statements differ in both to whom they were addressed and in substance, USPS is not required to treat the conduct in the same manner. *See Horn v. United Parcel Servs. Inc.*, 433 F. App'x 788, 795 (11th Cir. 2011) (finding misconduct was not nearly identical where the employees violated different company policies). As such, Glover has not sufficiently pled the fourth element of his *prima facie* case.

Because Glover has not identified a similarly situated employee, the court will GRANT Defendants' Motion to Dismiss Count One as to Patrick Donahoe in his official capacity.

### B.  Count Two - Violation of Due Process Rights

In Count Two of his Amended Complaint, Glover asserts "a violation [of his] due process rights as the investigation was being actively controlled by the Defendants who were black supervisors." (Doc. 15, ¶ 23). Glover also alleges that "the Defendants deprived him of [his property interest in his federal employment] in violation of the due process clause of the Fifth Amendment to the U.S. Constitution and in violation of 42 U.S.C. §§ 1983 and 1981." (Doc. 15, ¶23). Although the complaint is unclear, apparently  Glover attempts to assert two causes of action in Count Two: a §1983 action alleging deprivation of his procedural due process rights and a § 1981 claim based on race discrimination.[2]  Because Glover asserts Count Two against the

---

[2] To the extent that Count Two could be construed as a *Bivens* claim, it will be addressed in response to Count Eight of Glover's First Amended Complaint.

Defendants generally, the court will assume he is bringing the §1983 and §1981 claims against all of the Defendants in both their individual and official capacity.  The court will address Glover's claims in turn.  However, regardless of how the claim is couched, Count Two is due to be dismissed.

i.      *Section 1983*

Section 1983 does not create any substantive rights, but only creates a remedy for violation of a separate federal law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617–18 (1979).  To obtain relief under § 1983, a plaintiff must show both that he was deprived of a federal right and that the deprivation was caused by a person who was a state actor.  *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000).  Although Glover alleges that he was deprived of his Fifth Amendment due process right, Glover alleges no facts indicating that Donahoe, Buggs, King, or Johnson were state actors.  Instead, Glover alleges only that Donahoe, Buggs, King, and Johnson were employees of the USPS.  (Doc. 15, ¶¶ 2–5).  Section 1983 does not apply to federal officers acting under the color of federal law.  *See Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978) (holding that §1983 "provide[s] a remedy for deprivation of rights under color of state law and do[es] not apply when the defendants are acting under color of *federal* law") (emphasis added); *Nicholson v. Johanns*, 511 F. Supp. 2d 1193, 1195 (S.D. Ala. 2007).  Therefore, the claim is barred to the extent that Glover asserts a claim against Donahoe, Buggs, King, and Johnson in their official capacities.

To the extent that Glover asserts a § 1983 claim against Donahoe, Buggs, King, and Johnson in their individual capacities, the claim likewise fails.  Section 1983 is inapplicable private individuals unless the individual qualifies as a state actor.  *Patrick v. Floyd Medical*

*Center*, 201 F.3d 1313, 1315 (11th Cir. 2000).  A private individual can qualify as a "state actor"

only if one of the three following tests are met: (1) the "state compulsion test," in which the state

has coerced or significantly encouraged the violative conduct; (2) the "public function test," in

which private parties perform a public function that is traditionally the exclusive prerogative of

the state; or (3) the "nexus/joint action test," in which the state has insinuated itself into a

position of interdependence with the private party, such that the state and private party are

essentially joint participants in an enterprise.  *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341,

1347 (11th Cir. 2001).

Glover does not allege that the Defendants quality as state actors and does not allege facts

sufficient to satisfy any of these tests.  Under the "state compulsion test," Glover alleges no facts

that any state government official acted in anyway to coerce or encourage Donahoe, Buggs, King,

or Johnson to discriminate against him or deny him due process.  Under the "public function

test," Glover alleges no facts indicating that Donahoe, Buggs, King, or Johnson were given

powers or performing functions that generally belong to the state government.  Finally, under the

"nexus/joint action test," Glover alleges no facts indicating a close symbiotic relationship

between any state and  Donahoe, Buggs, King, or Johnson.  Thus, Glover does not plead facts

that the Defendants acted under color of state law and has no claim under § 1983 against

Donahoe, Buggs, King, or Johnson in their individual capacities.

Glover, therefore, is foreclosed from bringing a § 1983 claim against Donahoe, Buggs,

King, or Johnson in either their official or individual capacities, and the court will GRANT

Defendants' Motion to Dismiss as to Patrick Donahoe, Darren Buggs, Derrick King and

Stephanie Johnson in their individual and official capacities.

14

ii.      *Section 1981*

Section 1981 prohibits race discrimination in making and enforcing contracts and is a statutory remedy in both private and public sectors.  42 U.S.C. § 1981; *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975).  In 1991, Congress amended § 1981 to stipulate that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of *State* law."  42 U.S.C. § 1981(c) (emphasis added).  The Eleventh Circuit has recognized that § 1981(c) does not provide a cause of action against federal employees for discrimination.  *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998) (barring plaintiff's § 1981 claim against his federal supervisors in their individual capacities).

Under the plain language of the statue and Eleventh Circuit precedent, Glover may not assert a § 1981 claim against Donahoe, Buggs, King, or Johnson in either their official capacities as USPS employees or in their individual capacities.  As such, Glover has failed to sufficiently plead facts to state a claim under § 1981.

Therefore, the court will GRANT Defendants' Motion to Dismiss Count Two as to Patrick Donahoe, Darren Buggs, Derrick King and Stephanie Johnson in their individual and official capacities.

**C. Count Three - Retaliation and Hostile Work Environment**

Glover also does not cite any law in his third cause of action, and the court again struggles to discern the legal basis of the claim.  Count Three appears to be a cause of action for retaliation under 42 U.S.C. § 2000e-16, Title VII.  However, Count Three also references "a hostile work atmosphere."  (Doc. 15, ¶ 29(e)).  For the sake of completeness, the court will

analyze Count Three as both a hostile work environment claim and a retaliation claim.  However, as discussed previously, the only proper defendant in a Title VII action is the Postmaster General, Patrick Donahoe, in his official capacity.

Therefore, the court will GRANT Defendants' Motion to Dismiss Count Three as to Darren Buggs, Derrick King, and Stephanie Johnson in total, and against Patrick Donahoe in his individual capacity.  Patrick Donahoe remains in this Count in his official capacity at this time.

### i. Hostile Work Environment

Title VII protects workers from a "'workplace . . . permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted).  To state a hostile work environment claim, a plaintiff must show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as [race]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive work environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability."  *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  To be actionable, the conduct in question must be "severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive."  *Harris*, 510 U.S. at 21

Defendants do not dispute that Glover has met elements one, two and five, but claim Glover has failed to sufficiently plead facts to meet elements three and four.  Therefore, the court

16

will limit its analysis to these elements.

First, Defendants argue that Glover has failed to meet the third element because the harassment was not caused by his race, but by the fact that Glover's co-workers believed he used racist language.  However, Glover alleges that Defendants were responsible for spreading the information about Glover's termination that led to his co-workers mocking him.  (Doc. 15, ¶ 29(e)).  Thus, although Glover was mocked by his co-workers because of his alleged comments and not because of his race, the facts set forth in Glover's Amended Complaint, when read in a light most favorable to Glover, show that the Defendants may have spread the rumors about Glover because of his race.  Therefore, Glover has alleged that he suffered harassment as a result of a protected characteristic.

Glover also alleges that he suffered harassment by being escorted out of the building in a humiliating fashion, being denied back pay for two weeks, and being prevented from accessing the building without co-worker assistance.  Glover repeatedly alleges that the Defendants took action against him as a result of his status as a white man.  Therefore, Glover has sufficiently alleged that the harassing behavior of Defendants was based upon Glover's protected characteristics, and Glover has satisfied the third element.

Second, Defendants argue that Glover has failed to meet the fourth element because the harassment was not sufficiently severe or pervasive.  The Supreme Court has instructed that the requirement that harassment be "severe or pervasive" was intended to "filter our complaints attacking the ordinary tribulations of the workplace."  *Faragher v. City of Boca Raton* 524 U.S. 775, 788 (1998).  In determining whether allegations of harassment are sufficiently severe or pervasive, courts are to consider four factors: (1) the frequency of the conduct; (2) the severity of

the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997).

In the present case, Glover alleges that Defendants started rumors about his termination, delayed in installing the door entrance code for two weeks, and failed to correct Glover's backpay for two weeks. Even looking at these allegations cumulatively, Glover has not plead facts sufficient to state a plausible claim that the workplace was "permeated with 'discriminatory intimidation, ridicule, and insult' that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Harris*, 510 U.S. at 20; s*ee Barrow v. Georgia Pac. Corp.*, 144 F. App'x 54, 57 (11th Cir. 2005) (holding that allegations of isolated racial harassment, including symbols and slurs, did not establish a hostile work environment). Glover alleges only a few instances of harassment that were not physically threatening and did not unreasonably interfere with his job performance. *See Satchel v. Sch. Bd. of Hillsborough Cnty.*, 251 F. App'x 626, 630 (11th Cir. 2007) (finding "workplace disputes concerning attendance procedures, classroom management, and compliance with policies" not sufficiently severe).

Accordingly, the court will GRANT Defendants' Motion to Dismiss the Court Three hostile work environment claim as to Patrick Donahoe in his official capacity.

    *ii.    Retaliation*

A retaliation claim under Title VII requires "(1) that [the employee] engaged in an activity protected under Title VII; (2) [the employee] suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Kidd v.*

*Mando Am. Corp.,* 731 F.3d 1196, 1211 (11th Cir. 2013).

a.      Element One: Protected Activity

Title VII forbids employers from discriminating against employees because they "opposed any practice" made unlawful by Title VII ("the Opposition Clause") or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation ("the Participation Clause").  *See Walker v. Sec'y, U.S. Dep't of Air Force*, 518 F. App'x 626, 627 (11th Cir. 2013); 42 U.S.C. § 2000e-3(a).  The Opposition Clause protects an employee's opposition to conduct that he reasonably believes violates Title VII, regardless of whether such conduct actually violates the statute.  *See*, *e.g.*, *Wu v. Thomas*, 863 F.2d 1543, 1546–47 (11th Cir. 1989).  This protection extends not only to those who file formal complaints, but also to those "who informally voice complaints to their superiors or who use their employers' internal grievance procedures."  *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989).

The facts alleged in Glover's First Amended Complaint, read in the most favorable light possible, indicate that Glover may have engaged in protected activity either when he made an initial call to the EEOC or requested to meet with acting Postmaster Darren Buggs.  Glover states in his Amended Complaint that he "called EEOC to voice his concerns about these rumors.  The EEOC instructed Glover to request a meeting with the postmaster and a NALC union representative."  (Doc. 15, ¶ 11(f)).  The Amended Complaint does not specifically state whether Glover called the EEOC to complain that co-workers were talking about him or whether he called with the intent to take the initial steps towards filing a racial discrimination complaint.  The Amended Complaint also does not specify Glover's purpose in seeking a meeting with

Buggs.

Nevertheless, viewing the facts in a light most favorable to Glover, these actions may have been the first time Glover attempted to express his opposition to what he believed to be a violation of Title VII.  Under Eleventh Circuit precedent, Glover was not required to file a formal complaint to establish protected activity as informal complaints and engagement in internal grievance procedures also constitute protected activity.  *See Rollins*, 868 F.2d at 400.  Either of these actions could possibly constitute protected activity, and Glover has barely pled sufficient facts to meet element one.

b.    Element Two: Materially Adverse Action

In the context of a Title VII claim, a materially adverse action means an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted).  The test for a "materially adverse action" in the context of a Title VII retaliation claim is much broader than in the Title VII discrimination context.  *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008).  In determining whether the level of adversity is reached, the adverse actions must be examined in their aggregate.  *See Akins v. Fulton Cnty., Ga.*, 420 F.3d 1293, 1301 (11th Cir. 2005).

Glover alleges that the Defendants retaliated against him by "public shaming and mocking in front of fellow USPS employees and upper level USPS management," refusing to re-instate his door entry code for multiple weeks, and forcing him to continue to work on the route where his accuser and witness live.  (Doc. 15, ¶ 29).  These allegations may have persuaded a reasonable worker from making or supporting a charge of discrimination.  As such, Glover has

pled sufficient facts to meet element two.

            c.      Element Three: Causal Link

A plaintiff making a retaliation claim under Title VII "need only establish 'that the protected activity and the adverse action were not wholly unrelated." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (quoting *E.E.O.C. v. Reicchold Chem., Inc.*, 988 F.2d 1564, 1571 (11th Cir. 1993).  This requires at a minimum that the decision maker "was actually aware of the protected expression at the time it took adverse employment action." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).  A decision maker's awareness of the protected activity can be established by circumstantial evidence. *Goldsmitth*, 966 F.2d at 1163.

Glover has not alleged sufficient facts from which one could infer that any USPS decision maker was aware that Glover had engaged in protected activity.  Glover alleges that he made two written requests to Cobb to speak with the acting Postmaster on March 19, 2010, and on March 22, 2010.  (Doc 15, ¶ 11(h)-(i)).  However, Glover has not alleged that these requests contained any information suggesting that he believed the USPS's actions violated Title VII.  Glover also alleges that he called the EEOC, but does not allege that any decision maker was ever informed that Glover had made the phone call. *See* (Doc 15, ¶ 11(f)).  Consequently, Glover has failed to allege facts showing a causal link necessary to state a claim for retaliation.

Accordingly, the court will GRANT Defendants' Motion to Dismiss the Court Three retaliation claim as to Patrick Donahoe in his official capacity.

**D.  Count Four - Entitlement to Relief from EEOC/Discriminatory Discipline/Retaliation**

In Count Four of his Amended Complaint, Glover asserts that he "is entitled to obtain relief for all claims brought to the Equal Employment Opportunity Commission."  (Doc. 15, ¶ 34).  He also asserts that the Defendants discriminated against him because of his race and subsequently retaliated against him.  The court cannot ascertain the cause of action Glover seeks to plead.  To the extent that Glover attempts to assert a claim against the EEOC, this claim must be dismissed because the EEOC is not a party to this suit.  To the extent that Glover attempts to assert claims against the Defendants for race discrimination and retaliation, this count duplicates Glover's claims for race discrimination in Count One and retaliation in Count Three.

Accordingly, the court will GRANT Defendants' Motion to Dismiss Count Four as to Patrick Donahoe, Darren Buggs, Derrick King and Stephanie Johnson in their individual and official capacities.

### E.  Count Five -  An Action Under *Bivens v. Six Unknown Fed. Narcotics Agents*

In Count Five of his Amended Complaint, Glover asserts a *Bivens* cause of action based on the individual Defendants' violations of his constitutional rights.  *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

*Bivens* allows a plaintiff to bring an action for alleged constitutional violations against those acting under color of federal law.  *Id*. at 397.  However, *Bivens* remedies are inappropriate when Congress has precluded judicially-created remedies by itself creating a remedy or "by declaring that existing statutes provide for the exclusive mode of redress."  *Bush v. Lucas*, 462 U.S. 367, 373 (1983).  *Lee v. Hughes*, 145 F.3d 1272, 1275 (11th Cir. 1998) Specifically, "[t]he comprehensive statutory scheme established by Congress relating to federal employment (CRSA) precludes the maintenance of job-related *Bivens* actions by federal employees."  *McCollum v.*

*Bolger*, 794 F.2d 602, 607 (11th Cir. 1986) (holding that the Constitution does not support private causes of actions "in cases in which the plaintiff's claim for relief arises out of an employment relationship governed by procedural and substantive administrative provisions that establish an effective remedy for constitution violations by the government"). Congress has provided Title VII and the Civil Service Reform Act of 1978 ("CSRA") as a federal employee's exclusive remedies for a claim of discrimination based upon race, color, religion, sex or national original, or a retaliation claim within the context of their federal employment. *See* 42 U.S.C. § 2000e-16; *United States v. Fausto*, 484 U.S. 439 (1988); *Canino v. U.S. E.E.O.C.*, 707 F.2d 468, 472 (11th Cir. 1983). As such, Glover is precluded from asserting a *Bivens* action against Donahoe, Buggs, King and Johnson.

Accordingly, the court will GRANT Defendants' Motion to Dismiss Count Five as to Patrick Donahoe, Darren Buggs, Derrick King and Stephanie Johnson in their individual and official capacities.

### F.  Counts Six and Seven:  Claims for Libel and Slander

Counts Six and Seven of the Amended Complaint assert causes of action for libel and slander. The court will dismiss these counts for two principal reasons: (1) these claims are precluded by the statute of limitations, and (2) these claims cannot validly be asserted against the United States.

First, the Alabama Code states that "[a]ll actions of libel and slander must be brought within two years." Ala. Code § 6-2-38(k) (1975). Glover filed his initial complaint on November 6, 2013. He did not assert his claims for libel and slander until he filed his Amended Complaint on February 24, 2014. The events giving rise to Glover's libel and slander claims

occurred between March 4, 2010, the date of the alleged incident on Glover's route, and August 21, 2010, the day that he filed his original complaint with the EEOC. (Doc. 15, ¶8–1). Even if the claims related back to the date of the original filing, November 6, 2013, more than two years had elapsed since the allegedly libelous and slanderous incidents. Thus, the libel and slander claims are barred by the statute of limitations.

Additionally, even if the statute of limitations did not bar these claims, they are nevertheless subject to dismissal based on the sovereign immunity of the United States. This court substituted the United States as the defendant for the libel and slander claims because the Defendants had been acting within the scope of their employment at the time the alleged libelous and slanderous offenses occurred. (Doc. 24). Sovereign immunity bars tort actions against the United States except to the extent that it consents to be sued. *Means v. United States*, 176 F.3d 1376, 1378 (11th Cir. 1999). Although Congress has provided for a limited waiver of sovereign immunity in the Federal Tort Claims Act ("FTCA"), the FTCA expressly exempts "[a]ny claim arising out of . . . libel, [or] slander. 28 U.S.C. § 2680(h). Glover's libel and slander claims are, therefore, barred by sovereign immunity.

Accordingly, the court will GRANT Defendants' Motion to Dismiss Counts Six and Seven to Patrick Donahoe, Darren Buggs, Derrick King and Stephanie Johnson in their individual and official capacities.

### G. Count Eight - Challenge to the EEOC's Decision

Count Eight of the Amended Complaint seeks "the right to challenge the EEOC's decision under 42 USC 2000e-16" and appears to reallege claims of race discrimination and retaliation. To the extent that Glover attempts to assert a claim against the EEOC, the claim must

be dismissed because the EEOC is not a party to this suit.  To the extent that Glover asserts

claims against Donahoe, Buggs, King, and Johnson for race discrimination and retaliation, the

claim duplicates Glover's Counts One and Three.

Accordingly, the court will GRANT Defendants' Motion to Dismiss Count Eight as to

Patrick Donahoe, Darren Buggs, Derrick King and Stephanie Johnson in their individual and

official capacities.

## V. CONCLUSION

For the reasons stated above, the court will GRANT Defendants' Motion to Dismiss.  The

court will GRANT the motion as to all claims against Darren Buggs, Derrick King, and

Stephanie Johnson in their individual and official capacities and will DISMISS these claims

WITH PREJUDICE.  The court will GRANT the motion as to all claims against Patrick Donahoe

in his individual capacity and will DISMISS these claims WITH PREJUDICE.  The court will

GRANT the motion as to Counts Two, Four, Five, Six, Seven, and Eight against Patrick

Donahoe in his official capacity and will DISMISS these claims WITH PREJUDICE.  The court

will GRANT the motion as to Counts One and Three against Patrick Donahoe in his official

capacity and will DISMISS these claims WITHOUT PREJUDICE.

DONE and ORDERED this 29th day of September, 2014.

_Karon O. Bowdre_
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE